DOUGLAS GARLAND, Claimant and Appellant, v. The ANACONDA COMPANY, Employer and the Anaconda Co., Defendant and Respondent.

No. 14132.

Submitted June 15, 1978.

Decided July 3, 1978.

581 P.2d 431

Judgment and findings of Workers' Compensation Court vacated and set aside and cause remanded for hearing on merits.

Burgess, Joyce Prothero & Whelan, Thomas F. Joyce argued, Butte, for defendant and appellant.

Stephen Williams argued, Butte, for defendant and respondent.

MR. JUSTICE DALY delivered the opinion of the Court.

This is an appeal from the Workers' Compensation Court by the claimant who was denied temporary total disability payments. Claimant Douglas Garland appeals and presents one issue for this Court's review:

Whether the Workers' Compensation Court erred in denying temporary total compensation benefits to an employee who suffered an injury in the course and scope of his employment?

The Anaconda Company, a self-insured employer, refused payments because the employee changed doctors without the consent of the employer.

Douglas Garland was injured in the course and scope of his employment at the Anaconda Company's Arbiter Plant in Anaconda, Montana, on June 19, 1977. At the time he was using a high pressure hose, lost his balance and fell to the floor, twisting his back. He continued to work until June 22, 1977, when he reported off work because of the injury. He saw Dr. Philip Blom, a chiropractor, who practices in Butte, Montana, on June 27, 1977 and was subsequently seen by Dr. Blom on June 29, July 1 and July 6, 1977. Dr. Blom took x-rays of the cervical portion of claimant's back. On July 14, 1977, Dr. Blom submitted a statement to the employer for $73 and submitted an "Attending Physician's First Report"diagnosing a "Thoracic strain with accompanying myofacitis". Dr. Blom treated Garland with "chiropractic manipulation and physiotherapy."

On July 6, 1977, Dr. Blom signed a "Certificate of Comdition" stating Garland could return to work on July 6, 1977, with the note: "Patient failed to return for additional treatment and [is] presumed to be asymptomatic". The employer paid the $73

medical bill of Dr. Blom and compensation at the rate of $162 per week from June 20 through July 5, 1977, in a total amount of $347.14.

On July 11, 1977, the claimant saw Dr. Charles Canty, a Butte orthopedist, who diagnosed an upper back muscle spasm and advised him not to work for approximately two weeks and prescribed Equagesic, an analgesic. Claimant saw Dr. Canty again on July 26, 1977 and he was advised he could return to work on approximately August 1, 1977.

The employer refused to pay compensation after July 6, the date of Dr. Blom's release because the employee went to Dr. Canty without first obtaining the employer's consent. It is admitted the employee did not first obtain the consent of the Anaconda Company to see Dr. Canty.

The claimant then petitioned the Workers' Compensation Court for a hearing contending he was entitled to compensation up to August 5, 1977 and prayed for attorney fees pursuant to section 92-616, R.C.M.1947, for wrongful denial of a claim. A hearing was scheduled but not held because counsel submitted the matter to the court on an agreed statement of facts. Briefs were filed, and the court entered its findings of fact, conclusions of law and order denying claimant any relief under the Workers' Compensation Act. From this order the claimant appeals.

Dr. Blom did not base his opinion that claimant could go back to work on July 6, 1977 upon an examination of claimant but on the fact that claimant failed to return for additional treatment. Dr. Canty gave his opinion that Garland could not return until August 5, 1977, based on examinations made July 11 and 26, 1977.

The employer refused to pay compensation after July 5, 1977, and refused to consider Dr. Canty's opinion because the employee saw Dr. Canty without its consent. This conduct brings into question the right of an employee to select his own physician and the validity of MAC 24-3.18 (22)-S18080, promulgated by the Workers' Compensation Division which provides:

"SELECTION OF PHYSICIAN (1)The injured workman may

select the physician to provide the initial treatment. Authorization is required to change doctors. The insurer should be advised by the doctor when unusual treatment is required for emergency or critical cases.

"(2) The attending doctor shall be responsible for the type, duration and frequency of treatment, including hospitalization, nursing service and medication subject to recognized professional standards.

"(3) Prior approval of the insurer must be obtained before referral of a workman to a medical specialist for consultation except in an emergency. The report of the consultant shall be available to the insurer upon request. Insurers may request consultation and evaluation by a doctor of their choice.

(4) Special nurses will be paid only if ordered by the doctor."

This rule was apparently promulgated pursuant to the legislative authorization contained in section 92-814, R.C.M. 1947, which provides:

"Powers of division. The division is hereby vested with full power, authority, and jurisdiction to do and perform any and all things, whether herein specifically designated or in addition thereto, which are necessary or convenient in the exercise of any power, authority, or jurisdiction conferred upon in under this act."

[1] The rule requiring prior authorization to change physicians has a functional purpose. In 2 Larson's. Workmen's Compensation Law, Medical Benefits, § 61.12, p. 447, it is stated:

"* * * it is generally held that the employee should ordinarily not incur medical expenses without first giving the employer a reasonable opportunity to furnish such services, and, if he does so, the employee will be liable for that expense himself."

This rule was properly adopted by the Division of Workers' Compensation. The intent of the rule was to require the injured worker to obtain authorization before changing doctors. The reason and background for the rule is discussed in 2 Larson's, Workmen's Compensation Law, § 61.12, pp. 446-448:

"Some statutes * * * expressly state that in the event of the employer's failure to do so, the employee may make his own arrangements for medical care at the employer's expense; but whether this provision appears in statute or not, it is generally held that the employee should ordinarily not incur medical expense without first giving the employer a reasonable opportunity to furnish such services, and, if he does so, the employee will be liable for that expense himself. * * * Nor can claimant, when adequate treatment is being furnished by an authorized doctor, arbitrarily and without consent change doctors at the employer's expense."

This case came to the Workers' Compensation Court on an agreed statement of facts and briefs and Hon. William E. Hunt in his findings of fact and conclusions of law determined claimant Douglas Garland was not entitled to further relief under the Workers' Compensation Act due to his failure to comply with MAC 24-3.18 (22)-S18080. We cannot agree.

We note that the Workers' Compensation Act has always been liberally construed in favor of the injured workman. Section 92-838, R.C.M.1947; *Rumsey v. Cardinal Petroleum*, (1975), 166 Mont. 17, 530 P.2d 433; *State ex rel. Romero v. District Court*, (1973), 162 Mont. 358, 513 P.2d 265. The proper result of the claimant failing to comply with this rule is that the employer cannot be charged for the services of the unauthorized second doctor, however the Workers' Compensation Court must consider the medical reports and diagnosis of the second doctor.

The judgment and findings of the Workers' Compensation Court are vacated and set aside and this cause remanded for a hearing on the merits (physical disability of the claimant) in conformity with this Opinion.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, SHEA and SHEEHY concur.